### THOMAS et ux. v. SULLIVAN.

Circuit Court of Appeals, Eighth Circuit.
April 20, 1928.

Rehearing Denied September 21, 1928.

No. 7901.

Paul Pinson, of Muskogee, Okl., and Clarence M. McRae, of Tulsa, Okl. (Daniel Haden Linebaugh, of Tulsa, Okl., on the brief), for appellants.

Roscoe E. Harper, of Tulsa, Okl. (Herbert D. Mason, Arthur B. Honnold, and Harold R. Williams, all of Tulsa, Okl., on the brief), for appellee.

Before KENYON, Circuit Judge, and SCOTT and SYMES, District Judges.

SCOTT, District Judge. In this case F. D. Sullivan, sole trader, doing business under the name of the Sullivan Company, filed a creditor's bill against James H. Thomas and Eugenia Thomas, bottomed on a judgment dated March 27, 1924, obtained by the Guaranty Bank & Trust Company of Memphis, Tenn., against James H. Thomas and Thomas Guinn, as copartners in the firm of Thomas & Guinn, contractors. The judgment was originally recovered upon a trade acceptance issued by the partnership to the Sullivan Company in consideration of the purchase of a $5,000 order for a preparation known as "Konset." Such preparation was supposed, when mixed with Portland cement, to make concrete set quickly. The trade acceptance was indorsed in due course to the Guaranty Bank & Trust Company. After obtaining judgment, the Guaranty Bank & Trust Company assigned the same to the plaintiff. Execution had been issued and returned nulla bona, and the plaintiff filed his bill to set aside a conveyance by James H. Thomas, defendant, to the defendant Eugenia Thomas, his wife, on July 19, 1923, of lot 4, block 181 Old Town, in the city of Tulsa, Okl., and praying that said property be subjected to the payment of plaintiff's judgment. It was alleged that the conveyance was by quitclaim deed without consideration, and with the intent to hinder, delay, and defraud creditors. The bill further alleged:

"That, even if Eugenia Thomas had an interest in said land, she is now estopped from setting up her ownership thereof or any interest therein; that for a number of years prior to July 20, 1923 (that being the date of the trade acceptance) she clothed her husband, James H. Thomas, with the legal title to said land and held him out to the world, including this plaintiff, as the owner thereof; that Thomas represented to plaintiff that he owned said land, and plaintiff, relying upon this representation, extended credit."

The defendants answered, denying that the conveyance was without consideration or fraudulent, and denying that Eugenia Thomas had an interest in said land prior to the 19th day of July, 1923, and denying that she ever clothed her husband with the legal title to said land, or held him out to the world as the owner thereof, and alleging that the defendant James H. Thomas had held title to the premises in trust for his son George Thomas, and that said conveyance had been made at the instance and request of George Thomas and for a valuable and adequate consideration passing from the defendant Eugenia Thomas to George Thomas.

James A. Thomas is a white man, and Eugenia Thomas, his wife, is an Indian woman. James and Eugenia Thomas had several children, and George Thomas was one of the older sons. Eugenia Thomas and the children had received allotments of land from the Creek Nation, which became valuable by reason of discoveries of oil thereon. Eugenia Thomas and the children had for some years received large sums as royalties from these lands, and early in the year 1917, large gross sums were received in consideration of extension of leases. At that time Eugenia Thomas received $30,000 and George Thomas and others $20,000 each. James H. Thomas, the husband, had been in the past engaged in various ventures and occupations. He had run an automobile tire shop. He had owned a drug store and other classes of business, but had never been successful on his own account. He had been the guardian of George Thomas and other children, and had handled considerable of the moneys of his wife and children, usually with disastrous results. As stated, at the time in question, he was trying the contract business with one Tom Guinn. On April 23, 1917, shortly after the receipt of the large sums of money of the wife and children on account of the extension of the lease, James H. Thomas negotiated the purchase from Amanda J. Taylor of lot 4 in controversy for a consideration of $12,000. He took the title in his own name and held such title at the time the firm of Thomas & Guinn issued the trade acceptance. In connection with his business ventures, James H. Thomas on February 7, 1923, gave a statement to R. G. Dunn & Co. in which he listed the lot in question as an asset. One of the witnesses for plaintiff testified that, at the time of giving the trade acceptance, James H. Thomas claimed to own the property in controversy. James H. Thomas also held in his name a large number of other items of property, real and personal, and shortly following the execution of the deed in question, and during the summer and fall of 1923, he made a large number of conveyances to different parties; most of them being to creditors.

At the trial below James H. Thomas, Eugenia Thomas, and George Thomas all testified that the property in controversy, referred to as the property at Ninth and Boston streets, was bought with money of George Thomas, received on the extension of the lease, and for George Thomas, and was always considered his property; that, George not being of age, the father took the title in his own name and held it for a considerable time thereafter, the explanation being that George was rather improvident and might dispose of the property. This was with George's consent. It is contended by the appellee that the property was bought by James H. Thomas with his own money, and that it was his property. On the other hand, James H. Thomas testified that he had no money with which to buy property of his own, and that his only resources were the moneys of George. It is pointed out, however, that the $20,000 received by George was by order of court on March 7, 1917, directed to be deposited in the Exchange Bank of Tulsa, and that it remained there until May 20, 1918, and that on October 31, 1918, George being of age receipted to his father for this money. It is true that such a receipt appears in the record, but it does not recite that George received the $20,000 on that date. It merely recites that "on the 10th day of June, 1918, I made full and final settlement with James H. Thomas, my guardian, and I do hereby acknowledge the receipt of $20,350.33 in full of all demands against him as such guardian, together with all books, papers and property in his possession belonging to me." George Thomas testified, however, "I got all of the $20,000, in cash from the Exchange National Bank. This money was tied up there in the bank, and I paid some on that property and other things I owed him, and paid the bank what I owed it. It was $20,000, and when I left there I didn't have but about $2,000 of it." The record is not very clear as to how the matter was handled between James H. Thomas, the bank, and George Thomas, minor. It does appear, however, without much controversy, that the property was bought shortly after the $20,000 was received; that James H. Thomas had no money of his own to buy the property; that the property was bought and the $12,000 paid; and that in

the following spring, when George attained his majority and settled with his father and the bank, he had only $2,000 coming. This large amount of money had disappeared in some way, and no considerable sum thereof is accounted for except by the purchase of this property.

The trial court found for the plaintiff to the effect that the property in question was the property of James H. Thomas, that it was conveyed to Eugenia Thomas, his wife, by quitclaim deed without consideration and in fraud of creditors, and ordered the deed set aside and said property subjected to the plaintiff's judgment. It is from that decree that the defendants James H. Thomas and Eugenia Thomas appeal.

The testimony of George Thomas and Eugenia Thomas shows without conflict that Eugenia Thomas, after the purchase of this property from Amanda J. Taylor, made various loans and advances to George, who had married and purchased a home. She advanced him $7,000, at the time he bought a home on Fifteenth and Cincinnati streets, Tulsa. He had borrowed money to buy a car in the amount of $2,000, and various other sums, which early in 1923 aggregated about $17,000. These sums it is testified were advances, with the understanding that the mother, Eugenia, should have security upon the lot in controversy, and, about six months before the deed was finally executed, George had directed his father to deed the property to his mother, and the deed was made pursuant to that direction. We are satisfied that the advances by the mother to George were made as testified, and that the property originally was bought for George Thomas by his father and with his money. As stated, just how the details were handled between James H. Thomas, the bank, and George Thomas is not made clear, but we think the testimony fairly shows that, whatever the arrangement was, it was an arrangement in behalf of George.

The question now occurs: Is the plaintiff entitled to nullify this conveyance and subject the property to the payment of his judgment under his plea that Eugenia Thomas is estopped from setting up her ownership thereof or any interest therein, for "that for a number of years prior to July 20, 1923, she clothed her husband, James H. Thomas, with the legal title to said land and held him out to the world, including this plaintiff, as the owner thereof"?

We find no testimony in the record to support this allegation. Eugenia Thomas had not been instrumental in placing the title in the name of James H. Thomas. James H. Thomas clothed himself with whatever apparent title he had. It is not shown that Eugenia Thomas had any knowledge or notice that her husband had ever claimed to own the property in his own right. It is not shown that she had knowledge or notice of any representations that he had ever made to that effect, or that she had any knowledge whatever of the R. G. Dunn & Co. statement, or any other statement made by the husband, or that George Thomas had any such information. The plaintiff never acquired any lien on the property in question. The transaction between George Thomas and his mother, Eugenia, had been consummated before the plaintiff obtained any judgment against James H. Thomas, and we think for a full and valid consideration. In view of our conclusions, it follows that the trial court was in error in holding the deed in question invalid and decreeing that the same be set aside and subjected to the payment of plaintiff's judgment, and for that reason the decree is reversed, with direction to the trial court to dismiss the plaintiff's bill.

Reversed.